**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| **FREDERICK DIXON,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:05-0218** |
| ) | |
| **WARDEN MARTY ANDERSON,** *et al.* ) | |
|     **Defendants.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. No. 45.) Having carefully examined the record, the undersigned concludes and hereby recommends that Defendants' Motion to Dismiss must be granted for Plaintiff's failure to exhaust administrative remedies prior to initiating this civil action.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

On March 14, 2005, Plaintiff, formerly incarcerated at FCI Beckley, Beaver, West Virginia, and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to <u>Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (Doc. No. 1.)  Plaintiff complains that (1) he was subjected to harassment and retaliation because of racial hatred and his status as a jailhouse lawyer; (2) caucasian inmates are given preferential treatment for jobs, substance abuse programs, and academic opportunities; (3) staff fabricated incident reports on numerous occasions; (4) his First Amendment right was violated when staff refused to allow him access to a book; (5) Defendants conducted a

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

retaliatory shakedown of his cell and arbitrarily and capriciously confiscated his dictionary, legal papers, dentures, and postage stamps; (6) he was denied access to the law library; (7) Defendants removed the typewriter from the Special Housing Unit law library to prevent him from having access to it; (8) he was arbitrarily placed on bag meals and Defendants refused to feed him; (9) he was held incommunicado for a month when staff confiscated all of his property; (10) he was humiliated by being forced to stand nude while a white female staff member videoed him; (11) a disciplinary officer was personally biased against him; (12) Defendant Blankenship accused him of lying about missing legal materials and cancelled his legal research detail in the Special Housing Unit; (13) staff entered into a conspiracy to have him wrongfully confined to the Special Housing Unit because of racial hatred and for filing administrative remedies; (14) staff threatened him for writing letters to the Warden regarding racial slurs used by staff members and refused to provide him with cleaning supplies and filed false incident reports against him claiming that he had threatened staff; (15) staff stripped searched him, provided him with underwear that was too small, and he was videoed by a female staff member; (17) Defendant Cales refused to give him a meal and falsified an incident report claiming that he had refused his meal; (18) while he was being stripped searched, staff members placed medicine into his mail and claimed that he was in possession of medication and confiscated his postage stamps and dentures; (19) staff conducted a retaliatory shakedown of his cell and confiscated his dictionary and administrative remedy forms; (20) staff confiscated his property and made racial slurs; (21) staff used excessive force when transporting him from a medical assessment; (22) staff confiscated a draft of his civil rights claim and 25 to 30 administrative remedy forms, eight postage stamps, and several exhibits in an attempt to circumvent the administrative remedy process and to hold him incommunicado; (23) he was moved to a cell

without a back window in January subjecting him to cold temperatures; (24) staff held administrative remedy forms without processing them; (25) staff confiscated his administrative remedy forms in an attempt to deny his opportunity to exercise his right to process; (26) staff confiscated his property which left him without his postage stamps, cosmetics, legal and religious materials, blankets, pillows, and a change of clothes for 10 days; (27) Defendant Pantry made a racial slur when he delivered a bag meal to him; (28) Defendant Pantry refused to give him his breakfast meal; (29) he was subjected to a retaliatory strip search resulting in 28 stamps being removed from his person, soap and toothpaste being removed from his cell, and his dentures being broken. Plaintiff indicates that the alleged incidents occurred over a period of time spanning between March 2004 and March 2005.    Plaintiff also filed on March 14, 2005, an Application to Proceed *in forma pauperis*. (Doc. No. 2.) The Court found Plaintiff's Application deficient (Doc. No. 5), and Plaintiff filed a further Application on April 10, 2005. (Doc. No. 9.)

On April 12, 2005, Plaintiff filed a letter form Motion for a Temporary Restraining Order. (Doc. No. 7.) In his Motion for injunctive relief, Plaintiff requested that the Court direct the Defendants to (1) provide him with postage to mail his pleadings in this civil action to the Court; (2) photocopy his legal documents, and (3) allow him access to the law library for a period six hours per week. Plaintiff alleged that he had been unable to file an Amended Complaint in this civil action because he was denied postage.

On September 13, 2005, the Court granted Plaintiff's Motion to Proceed *in forma pauperis* and ordered Defendants to file a response to Plaintiff's Motion for Injunctive Relief. (Doc. Nos. 14 and 15.) On September 21, 2005, Defendants filed a Notice of Release of Prisoner advising that Plaintiff was released from FCI Beckley on July 1, 2005, to 2142 David Avenue, Ypsilanti,

Michigan 48198. (Doc. No. 41.) Defendants contended that Plaintiff's release rendered Plaintiff's Motion for Injunctive Relief moot. (Id.)

On November 16, 2005, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support. (Doc. Nos. 45 and 46.) Defendants contend that Plaintiff's Complaint must be dismissed because Plaintiff failed to fully exhaust his administrative remedies prior to initiating this civil action. Defendants contend that although Plaintiff asserts he was denied access to the grievance process, there is no evidence to support his conclusory statement and that his administrative remedy history shows Plaintiff not only had access to the administrative remedy program but that Plaintiff exercised his right to access the program.

On November 17, 2005, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. No. 47.) Plaintiff has not filed any response to the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.[2] Nevertheless, the undersigned considers Plaintiff's verified Complaint as his response to the Defendants' Motion.[3]

---

[2] Although Plaintiff has recently indicated that prison officials have confiscated all of his legal documents causing him to be unable to file further pleading in this matter (Doc. No. 55.), the undersigned notes that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and *Roseboro* Notice was mailed to Plaintiff after he released from custody at 2142 David Avenue, Ypsilanti, Michigan 48198. The undersigned further notes that the documents were not returned as undeliverable and it appears from Plaintiff's recent filings that he has been reincarcerated at FCI Beckley.

[3] Because Plaintiff has not filed a response to the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the undersigned will consider the statements contained in his verified Complaint as his response to the Motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal

On January 5, 2006, the undersigned entered his Proposed Findings and Recommendation with respect to Plaintiff's Motion for Injunctive Relief. (Doc. No. 48.) The undersigned recommended that the District Court deny Plaintiff's Motion because Plaintiff's release from Beckley FCI on July 5, 2005, rendered Plaintiff's claim for injunctive relief moot. (Id.) By Order filed on February 2, 2006, Chief United States District Judge David A. Faber, adopted the Proposed Findings and Recommendation and thereby denied Plaintiff's Motion for Injunctive Relief. (Doc. No. 49.)

## DISCUSSION

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law," though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary

---

knowledge.")(*citing Davis v. Zahradnick*, 600 F.2d 458, 459-60 (4th Cir. 1979)("Holding that the factual allegations contained in a verified complaint establish a *prima facie* case under 42 U.S.C. § 1983, so as to preclude summary judgment."); *see also Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992)(Finding that an inmate's verified Complaint under the statutory substitute for the taking of an oath, 28 U.S.C. § 1746(1), by declaring "under penalty of perjury . . . that the foregoing is true and correct,' and dating his signature," constitutes his affidavit and may be considered in opposition to summary judgment.).

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 922, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). Furthermore, administrative remedies must be exhausted with respect to each claim against each and every Defendant or the Complaint must be dismissed under the "total exhaustion rule" found in § 1997e(a). See Quinones v. Rubenstein, Civil Action No. 5:02-1365 (S.D.W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action" as stated in § 1997e(a), the District Court concluded that no action shall be brought barring total exhaustion of each and every claim.)(*citing* Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000); Givens v. City and County of San Francisco, 2002 WL 31478180, *2 (N.D. Cal. Nov. 5, 2002); Saunders v. Goord, 2002 WL 1751341, *3 (S.D. N.Y. Jul. 29, 2002)). In Quinones, Chief Judge Faber adopted the total exhaustion rule as applied to *habeas* actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar civil rights actions. (Id., p. 21.) (Id., p. 20.) The Court concluded that the total exhaustion rule "does not detrimentally affect plaintiff's available remedies . . . [r]ather dismissing the present [unexhausted] claims improves judicial economy by encouraging the plaintiff to reshape his complaint to include only cognizable claims." (Id., p. 22.) "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir.

2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his "available" administrative remedies.)

It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

The Fourth Circuit has determined that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. While the inmate must make affirmative efforts to follow administrative procedures, prison officials make those procedures "unavailable" when they thwart the inmate's attempts to follow them. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although

exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)).

The Bureau of Prisons' Administrative Remedy Program, 28 C.F.R. §§ 542.10 - 19, is a process "through which inmates may seek formal review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Depending upon at what level an inmate initiates it, the Bureau of Prisons' Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form known in prison slang as a "cop-out". 28 C.F.R. § 542.10. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmates Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete.

To discern whether and to what extent that Plaintiff has attempted to exhaust administrative remedies, the undersigned has examined the Declaration of Sharon Wahl attached as Exhibit 1 to Defendants' Motion. (Doc. No. 45, Exhibit 1.) Ms. Wahl states that as the Legal Instruments Examiner, she has access to SENTRY, the Federal Bureau of Prisons' online inmate information system. (Id. at 4 ¶¶ 1-3.) Although Ms. Wahl indicates that Plaintiff has filed a total of 38 administrative remedies, Ms. Wahl states that "Inmate Dixon only fully exhausted his administrative remedies as to Remedy Number 371865, wherein Inmate Dixon alleged staff confiscated and broke his dentures, confiscated his stamps, and confiscated his administrative remedy forms."(Id. at 8-9 ¶ 31.) Ms. Wahl further states that Plaintiff was released from custody on July 1, 2005 and that "[e]ven if inmate Dixon was still within the custody of the Bureau of Prisons, if he attempted to file an administrative remedies [sic] relating to the instant complaint, his administrative remedies would be rejected as untimely." (Id. at 9 ¶¶ 33-34.)

Defendants have asserted that Plaintiff failed to exhaust administrative remedies before filing his Complaint as an affirmative defense, and it is clear that Plaintiff did not do so. In Plaintiff's Complaint, Plaintiff readily admits that he did not exhaust his administrative remedies, but argues that his failure to exhaust his administrative remedies should be excused because of the Defendants attempts to thwart his ability to utilize the administrative remedy process.

In his Complaint, Plaintiff alleges that March 9, 2005, he was subjected to a retaliatory strip search resulting in 28 stamps being removed from his person, soap and toothpaste being removed from his cell, and his dentures being broken. The undersigned notes that Plaintiff filed his Complaint on March 14, 2005. Sharon Wahl indicates Plaintiff filed an administrative remedy (371865-F1) with respect to this claim on April 4, 2005 (Doc. No. 45 at 8 ¶ 26.), after Plaintiff filed

9

his Complaint in this matter. Ms. Wahl indicates that Plaintiff's administrative remedy request was denied and that Plaintiff subsequently appealed the denial to the Regional Office and the administrative remedy was denied. (Id.) Ms. Wahl further indicates that Plaintiff appealed the Regional Office's denial to the Central Office and the administrative remedy request was again denied. (Id.) Plaintiff clearly had not exhausted his administrative remedies with respect to this claim prior to filing his Complaint, nor was Plaintiff thwarted from exhausting his administrative remedies with respect to this claim.[5] Moreover, the fact that Plaintiff was able to file 38 administrative remedy requests belies his contention that Defendants prohibited him from utilizing the administrative remedy process. Plaintiff clearly did not exhaust his administrative remedies as required under the PLRA. Accordingly, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment should be granted pursuant to the "total exhaustion rule" found in § 1997e(a).

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal analysis and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. No. 45.), **DISMISS** this action and **REMOVE** it from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby

---

[5] Although Plaintiff was released from custody on July 1, 2005, Plaintiff is still subject to the PLRA's requirement of exhausting administrative remedies because Plaintiff was a prisoner at the time of filing his Complaint. See Chase v. Peay, 286 F.Supp.2d 523, 528 (W.D. Md. Sept. 30, 2003)(holding that the administrative exhaustion requirement under the PLRA continues to apply when a prisoner is released while his lawsuit still is pending in federal court noting that the PLRA's "plain language . . . focuses on the time that a lawsuit is 'brought' in federal court, indicating that the applicability of the exhaustion requirement must be determined at the time of filing.")

**FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and mail a copy to Plaintiff, who is acting *pro se*, and counsel of record.

Date: September 28, 2006.

R. Clarke VanDervort
United States Magistrate Judge